[Civ. No. 24204. Third Dist. Jan. 17, 1985.]

JOSEPH KEVIN BRENNAN et al., Plaintiffs and Appellants, v. GORDON BALL, INC., Defendant and Respondent.

COUNSEL

Roger S. Mancini for Plaintiffs and Appellants.

Stumbos & Mason and William C. Liviach for Defendant and Respondent.

OPINION

**CARR, J.**—Plaintiffs Joseph and Keith Brennan appeal from a summary judgment entered upon the motion of defendant Gordon Ball, Inc. The undisputed facts are that on August 1, 1981, a vehicle driven by Joseph Uppleger left the roadway and crashed, killing both Uppleger and Lori Ann Brennan, a passenger in the vehicle. On March 9, 1981, defendant had made a bona fide sale of the vehicle to Uppleger. On that date, a bill of sale was executed and defendant properly indorsed the ownership certificate and presented the same to Uppleger. On March 19, 1981, defendant sent by certified mail the registration card to Uppleger at the address shown on the bill of sale. Three weeks later, however, on April 9, 1981, the registration card was returned to defendant because it had been unclaimed by Uppleger and defendant thereafter retained possession of the registration card until the time of the accident.

The record fails to disclose whether defendant at any time delivered or mailed to the Department of Motor Vehicles (Department) a notice of the sale of the vehicle. As there is no evidence to the contrary we assume the records of the Department continued to list defendant as the legal and registered owner of the vehicle at the time of the accident. (See C.T. 17-25.) Plaintiffs[1] brought this wrongful death action against the estate of Uppleger and defendant.

The sole issue on appeal is whether defendant, at the time of the accident, was the owner of the vehicle driven by Uppleger within the meaning of that term as used in section 17150 of the Vehicle Code, which imputes to the owner the negligence of another person who uses or operates the vehicle with the permission, express or implied, of the owner.

In support of its motion in the trial court, defendant successfully asserted that delivery to Uppleger of the ownership certificate at the time of sale, coupled with the certified mailing of the registration card to Uppleger's last

---

[1]Plaintiffs Joseph and Keith Brennan are, respectively, the surviving husband and son of Lori Ann Brennan.

known address, constituted substantial compliance with the provisions of Vehicle Code section 5602 and defendant was thereby relieved of any liability as the owner of the vehicle. We do not agree and reverse.

## DISCUSSION

█ Vehicle Code section 17150[2] provides, in part, that "'Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle . . . by any person using or operating the same with the permission, express or implied, of the owner.'" For the purpose of imposing liability under section 17150, the transferor of an automobile continues to be an owner of the vehicle unless and until he complies with those conditions prescribed by other provisions of the Vehicle Code to relieve himself of liability. (*Enis* v. *Specialty Auto Sales* (1978) 83 Cal.App.3d 928, 935-936 [148 Cal.Rptr. 255].) █ "[T]he word 'owner' as used in section [17150] for the purpose of creating a liability thereunder, is not synonymous with that word as used in the ordinary sense of referring to a person or persons whose title is good as against all others. Under the Vehicle Code there may be several such 'owners' at any one time. One or more persons may be an 'owner,' and thus liable for the injuries of a third party, even though no such 'owner' possesses all of the normal incidents of ownership [citation]." (*Stoddart* v. *Peirce* (1959) 53 Cal.2d 105, 115 [346 P.2d 774].)

█ Plaintiffs contend defendant was the "owner" of the vehicle at the time of the accident in that it chose one of several methods accorded by the law, upon the sale of a vehicle, to terminate any imputed liability for subsequent negligent operation but ineffectually complied with that method. Defendant did not prior to the accident *deliver* to Uppleger *both* the ownership certificate and the registration card as required by section 5602, subdivision (a), and, plaintiffs assert, the unsuccessful mailing does not constitute delivery of the required documents within the meaning of the revelant Vehicle Code provisions. Further that defendant had an alternative method of terminating liability under section 17150, that of delivering or mailing to the Department a notice of the sale, giving the date of the sale, the names and addresses of the owner and the transferee, and a description of the vehicle. (§ 5900.) Plaintiffs urge that defendant's failure to deliver all the required documents to Uppleger, coupled with the failure to otherwise give notice of the transfer to the Department, compels a finding that defendant was the owner of the vehicle at the time of the accident within the meaning of section 17150. In our view, plaintiffs' argument has merit.

---

[2]Hereafter all statutory references to an unspecified code are to the Vehicle Code.

The revelant statutes governing transfer of title to a vehicle are found in chapter 2, articles 1-4 of the Vehicle Code, beginning with section 5600. The pertinent provisions of section 5600 provide: "No transfer of the title or any interest in or to a vehicle registered under this code shall pass, and any attempted transfer shall not be effective, until the parties thereto have fulfilled either of the following requirements:

"(a) The transferor has made proper endorsement and delivery of the certificate of ownership and delivery of the registration card to the transferee as provided in this code and the transferee has delivered to the department or has placed the certificate and card in the United States mail addressed to the department . . . .

"(b) The transferor has delivered to the department or has placed in the United States mail addressed to the department the appropriate documents for the registration or transfer of registration of the vehicle pursuant to the sale or transfer except as provided in Section 5602."

Two methods of effectuating ownership are set forth; one requiring action by the buyer and the other by the seller. If the seller relies upon the method of transfer prescribed by subdivision (a) of section 5600 to avoid liability premised upon ownership, he depends upon the buyer to complete the transaction. (*Rainey* v. *Ross* (1951) 106 Cal.App.2d 286, 289 [235 P.2d 45]; *Weinberg* v. *Whitebone* (1948) 87 Cal.App.2d 319, 326 [196 P.2d 963].) Nothing in the record demonstrates that Uppleger completed the transaction prior to the accident. The record is barren of any evidence that Uppleger either delivered or mailed any of the required documents to the Department prior to the accident. Obviously, he could not have mailed the registration card to the Department as it remained in defendant's possession following defendant's unsuccessful mailing of that document to Uppleger.

If title is not correctly transferred pursuant to section 5600, the transferor/seller may still escape civil liability for an accident caused by another by complying with section 5602, which provides: "An owner who has made a bona fide sale or transfer of a vehicle and has delivered possession thereof to a purchaser shall not by reason of any of the provisions of this code be deemed the owner of the vehicle so as to be subject to civil liability or criminal liability for the operation of the vehicle thereafter by another when the owner in addition to the foregoing has fulfilled either of the following requirements:

"(a) When he has made proper endorsement and delivery of the certificate of ownership and delivered the certificate of registration as provided in this code.

"(b) When he has delivered to the department or has placed in the United States mail, addressed to the department, either the notice as provided in Section 5900 or Section 5901 or appropriate documents for registration of the vehicle pursuant to the sale or transfer."

Section 5900 concerns the required notice to be given by a nondealer owner/seller of a vehicle and states in revelant part: "(a) Whenever the owner of a vehicle registered under this code sells or transfers his title or interest in, and delivers the possession of, the vehicle to another, the owner shall immediately notify the department of the sale or transfer giving the date thereof, the name and address of the owner and of the transferee, and such description of the vehicle as may be required in the appropriate form provided for such purpose by the department."

Sections 5602 and 5900 thus accord a bona fide seller, who delivers possession of a vehicle to the buyer, three optional methods of terminating potential future liability under section 17150. Two of these methods (delivery or mailing to the Department by the seller of the notice or the appropriate documents) give to the Department the required information concerning the transfer that is in process, information which would be available to all who might have occasion to inquire. ▉ Defendant, however, chose neither of these methods and selected instead the third optional method (delivery of both the certificate of ownership and registration card by the seller to the buyer) as set forth in section 5602, subdivision (a). But defendant did not comply with the requirements under that option. It did indorse and deliver the certificate of ownership to plaintiff, but did not deliver the certificate of registration. Defendant attempted to do so by sending the registration card by certified mail to the address Uppleger listed on the bill of sale. This was unsuccessful and an unsuccessful mailing does not constitute delivery as set forth in section 5602, subdivision (a).

That an attempted delivery of the requisite documents is insufficient to effectuate the transfer of title is clear from the language of the statute. Under section 5602, the seller may either deliver the documents to the buyer, or, in the alternative, deliver *or* mail the requisite documents or notice of the sale and transfer of ownership of the vehicle to the Department. There is no provision in section 5602 that the owner of the vehicle may avoid liability by simply placing in the mail *to the buyer* the required certificates of ownership and registration. An unsuccessful mailing, as in the instant case, fails to satisfy the requirement of delivery set forth in section 5602.

Defendant contends a good faith, attempted mailing of the registration to the buyer's last known address, should constitute substantial compliance with the provisions requiring delivery of such document. We disagree.

As urged by defendant, "delivery" is not defined in the Vehicle Code. However, as used in connection with the transfer of title and interest in vehicles, delivery is subject to the conditions and prerequisites provided by the Vehicle Code. (*Weinberg* v. *Whitebone, supra,* 87 Cal.App.2d at p. 325.) Section 5602, subdivision (a), upon which defendant relied to perfect the transfer of title, clearly contemplates the delivery to be made is one that effectuates a change of possession of the documents from the seller to the transferee who in turn either delivers or mails such documents to the Department. (See *Rainey* v. *Ross, supra,* 106 Cal.App.2d at p. 291; see also *Doran* v. *State Farm etc. Ins. Co.* (1963) 219 Cal.App.2d 256, 268 [33 Cal.Rptr. 225].) Without such change in possession of the certificate of registration, Uppleger lacked the indicated indicia of ownership and owed no duty of consummating the transaction of record as required by section 5600, subdivision (a). (Cf. *Rainey* v. *Ross, supra,* 106 Cal.App.2d at p. 291.) More importantly, defendant continued as "owner" for the purposes of section 17150. (See *ibid.*)

At first blush, the result we reach seems harsh. But the California courts have generally held that strict compliance with the provisions of section 5602 is required to permit an owner to escape the liability imposed by section 17150 for accidents which occur prior to notice of the transfer being received by the Department. (*Stoddart* v. *Peirce, supra,* 53 Cal.2d at p. 115; *Brown* v. *Fix* (1978) 86 Cal.App.3d 809, 812 [150 Cal.Rptr. 431]; *Uber* v. *Ohio Casualty Ins. Co.* (1967) 247 Cal.App.2d 611, 616 [55 Cal.Rptr. 720]; see also *Rainey* v. *Ross, supra,* 106 Cal.App.2d at pp. 288-292; *Weinberg* v. *Whitebone, supra,* 87 Cal.App.2d at pp. 324-326.) In *Ohio Cas. Ins. Co.* v. *Aetna Ins. Co.* (1978) 85 Cal.App.3d 521 [149 Cal.Rptr. 562], a buyer acquired a truck from a seller with the intent to buy it. The price had been agreed upon. The ownership certificate, however, remained in the seller's bank, to which the seller directed the buyer, expecting him to obtain financing there. But the buyer obtained loan documents from his own bank, and before he executed them, was involved in an accident. Despite the seller's good faith belief that the buyer would obtain both the loan documents and the ownership certificate from the seller's bank, his failure to effectuate a delivery of the ownership certificate resulted in the seller being held liable as the owner of the vehicle as the transfer was not in compliance with the provisions of sections 5602 and 5900. (*Id.,* at p. 523.)

In *Uber* v. *Ohio Casualty Ins. Co., supra,* 247 Cal.App.2d 611, the seller was unable to transfer the registration card at the time of the sale because it had been lost or mislaid. The *Uber* court held the loss or mislaying of the certificate of registration did not excuse compliance with the provision

requiring delivery thereof to the transferee as a condition to freedom from liability. (247 Cal.App.2d at pp. 615-616.)

Finally, in *Rainey* v. *Ross, supra,* 106 Cal.App.2d 286, the seller was unable to deliver the registration card to the buyer because, at the time of the sale, the card was in the possession of the Department, to which it had been sent by the seller in connection with his application for renewal of registration of the vehicle, and a new certificate of registration had not been returned to him. Notwithstanding that the seller forwarded to the buyer the registration card immediately upon his receipt of the card from the Department, he remained liable as the owner for an accident by the buyer prior to buyer's receipt of the registration. "Nondelivery of the certificate of registration, *from whatsoever cause,* operated as a failure to meet the several requirements of the option which [the seller] chose to exercise. His inability to comply with those requirements did not prevent him from accomplishing the desired objective. He could have given the state the notice prescribed by section [5900]. Indeed, if he had performed the duty imposed upon him by that section, he would have given timely notice to the state and would have terminated future liability under section [17150]." (Fn. omitted, italics added, 106 Cal.App.2d at p. 291.)

Strict compliance with section 5602 is required as a policy matter for the protection of other motorists in our increasingly mobile and diverse society. As stated by the *Rainey* court: "The code sections we have discussed represent and effectuate a thoughtfully evolved plan and procedure concerning the transfer and recordation of transfer of motor vehicles used upon the public highways, in aid of a policy to protect innocent purchasers and to afford identification of vehicles and persons responsible in cases of accident and injury, all in the interest of the public welfare. [Citations.] . . . 'The nature of motor vehicle traffic requires that there be a more certain *indicia* of ownership than mere possession for the protection of the general public in case of accidents or violations of the law and to prevent fraud upon innocent purchasers. In order to effectuate this purpose registration and identification of motor vehicles is required.' [Citation.] The plan has evolved into a well ordered system of motor vehicle title registration, and the regulation of ownership rights and duties upon the basis of such registration." (Original italics, 106 Cal.App.2d at p. 291.)

CONCLUSION

The California courts have consistently held that, notwithstanding the ownership of the vehicle has been effectively transferred between the seller and buyer, an injured person may disregard the transfer if prior to the accident the parties to the sale have not complied with the pertinent

provisions of the Vehicle Code. In such cases, the seller remains the owner pending compliance. (See *Stoddart* v. *Peirce, supra,* 53 Cal.2d at pp. 119-121.) In the instant case, there was not full compliance with section 5602. Defendant may well have made a good faith effort to deliver the registration card to Uppleger but the essential fact remains that the mailing was unsuccessful. Section 5602 provides no exemptions from liability for a transferor who has only *attempted* to deliver possession of the registration certificate to the buyer.

There may be a period of time in some instances following the transfer of title and possession of a motor vehicle "when legally and factually it appears difficult to determine responsibility for injuries resulting from accidents." (*Weinberg* v. *Whitebone, supra,* 87 Cal.App.2d at p. 326.) We are not presented with such a dilemma. Defendant received notice upon the return of the certified mailing that delivery of the registration card was unsuccessful. Defendant could then simply have provided notice of the sale and transfer to the Department pursuant to section 5900 and absolved itself from liability for the ensuing accident. As the court held in *Uber* v. *Ohio Casualty Ins. Co., supra,* 247 Cal.App.3d 611: "The inability of a transferor to comply with the method he selects to avoid liability premised upon ownership does not excuse his failure to select an alternate method with which he can comply." (247 Cal.App.2d at p. 616.)

The judgment is reversed and remanded to the trial court with directions to enter an order denying defendant's motion for summary judgment.

Evans, Acting P. J., and Sims, J., concurred.